People of State of Illinois ex rel. Will County Fair Association, Plaintiff-Appellee, v. Stillman J. Stanard, Director of Department of Agriculture, Morton H. Hollingsworth, Director of Department of Finance, Orville E. Hodge, Auditor of Public Accounts, Warren E. Wright, State Treasurer, all of State of Illinois, and Monee Will County District Fair Association, Defendants-Appellants.

Gen. No. 10,930.

Second District.

April 16, 1956.

Rehearing denied May 1, 1956.

Released for publication May 2, 1956.

Peacock & Peacock, of Morris, and Oscar R. Laraway, of Joliet, for appellant, Monee Will County District Fair Association.

Thomas L. Clinton, of Peotone, for appellee, Will County Fair Association.

JUSTICE EOVALDI delivered the opinion of the court.

This case comes to us for decision by transfer from the Supreme Court. It is an appeal from an order of the circuit court awarding a writ of mandamus directing the payment of monies to plaintiff-appellee. The petition for mandamus was filed in the circuit court of Will County by the People of the State of Illinois, ex rel., Will County Fair Association, against Stillman J. Stanard, Director of the Department of Agriculture of the State of Illinois, and other officers of the State of Illinois, and the appellant, Monee Will County District Fair Association. The matter came on for hearing before the court on the amended petition, answer of all defendants, and a stipulation of fact.

The amended petition alleged that the petitioner, Will County Fair Association, a corporation, qualified as the only active fair association since the year 1927 in Will County and was the only qualified and acting fair association in Will County on July 20, 1949, which is the effective date of the amendatory act of 1949

relative to county fairs, namely, Chap. 127, Sec. 164 of the Illinois Revised Statutes; that the petitioner qualified to participate in the Fair and Exposition Fund for county fairs as provided for in Section 6i of the State Finance Act as amended in 1953 (Ill. Rev. Stat., 1953, Chap. 127, Sec. 142i) and was the only county fair to qualify in the County of Will; and on April 27, 1955, said petitioner filed Declaration of Intention to participate in the Fair and Exposition Fund of the Department of Agriculture and was the only county fair association of the County of Will that had met the necessary qualifications to participate in the above-named fund; that the officers of the plaintiff demanded of the defendant, state officers, to pay it the entire allotment for Will County from the above-named Fair and Exposition Fund; but that the defendant, Stillman J. Stanard, Director of the Department of Agriculture, said he would pay one-half to the Will County Fair Association but refused to pay the other one-half to the plaintiff; that Stillman J. Stanard had adequate funds allotted to said Department of Agriculture from the Fair and Exposition Fund to pay the amount demanded in the amended petition.

The answer of the defendant, Monee Will County District Fair Association denied that the plaintiff was the only qualified fair to participate in the appropriations for Will County and admitted that one-half of the appropriations was payable to the petitioner and alleged that the other one-half of such allotment was payable, and should be paid, to said defendant.

The stipulation of fact by all the parties stipulates that the Will County Fair Association of Peotone, Will County, Illinois, and Monee Will County District Fair Association are corporations duly incorporated under the laws of the State of Illinois and that plaintiff, Will County Fair Association, had qualified as a county fair association in Will County from the year 1927 to the present time, and had held fairs in said county

and had received grants from the Agricultural Premium Fund of the State of Illinois from the year 1927 through the year 1954; that the Monee Will County District Fair Association held county fairs in Will County from the years 1945 through 1948 and received grants from the Agricultural Premium Fund of the State of Illinois for said years, and also held county fairs prior to the year 1945 and received grants from said fund at that time, and filed in the year 1949, prior to April 1st of that year, a notice in writing with the Department of Agriculture concerning the essential facts of its organization, location, officers, *date of exhibition and approximate amount of premiums to be offered;* that the Monee Will County District Fair Association *did not* hold an annual fair in the year 1949, *nor in any year subsequent thereto,* but did file prior to April 1, 1955, a notice in writing with the Department of Agriculture for participation in the Agricultural Premium Fund, as required by Section 28 of the State Finance Act [Ill. Rev. Stats. 1953, ch. 127, § 164], and on May 1st, 1955, filed an election to participate in the appropriation from the Fair and Exposition Fund pursuant to Section 6i of the State Finance Act; that the Will County Fair Association was granted a right to operate a county fair in the year 1955 by the County Board of Supervisors of Will County, but that no authorization was given to the Monee Will County District Fair Association by said county board; that the Will County Fair Association filed an appropriate notice in writing with the Department of Agriculture of the State of Illinois on or before April 1st, 1955, as required by Section 28 of the State Finance Act and had elected for the year 1955 to participate in the appropriations of the Fair and Exposition Fund pursuant to Section 6i of the State Finance Act and filed notice of such election prior to May 1, 1955; that the Will County Fair Association had served demand on the Director of the Department of Agri-

culture that the entire allotment from the Fair and Exposition Fund allocated to Will County be paid to Will County Fair Association; that Stillman J. Stanard, Director of the Department of Agriculture, had ruled that one-half of the Will County allotment from the Fair and Exposition Fund was payable to the Will County Fair Association and the other one-half of such allotment was distributable to the Monee Will County District Fair Association; that adequate funds had been appropriated for the payment of such amount as should be distributed to county fairs. The stipulation of facts concluded:

"It is the concensus of the parties hereto that the legal questions arising on these facts relate as to whether or not the Monee Will County District Fair Association is qualified to participate in one-half of the funds allotted to Will County, Illinois, from the Fair and Exposition Fund inasmuch as said Monee Will County District Fair Association has not held an annual fair since the year 1948, although it did hold a fair that year and filed a notice with the Department of Agriculture to participate in the appropriations from the Agricultural Premium Fund for the year 1949, said notice being filed on or before May 1st of that year, and inasmuch as the Monee Will County District Fair Association has not received any payments since the year 1948 from the Agricultural Premium Fund."

The court by its order found as a matter of law that the Monee Will County District Fair Association was not eligible to participate in the Will County allotment of the Fair and Exposition Fund, and ordered the writ of mandamus to issue against the defendants. The amount of the allotment was $29,946.87. A peremptory writ of mandamus directing the Department of Agriculture through the other state officers to issue voucher to the Will County Fair Association in said sum of $29,946.87 was filed on July 1, 1955, and the receipts for copies of said writ of mandamus were filed in the circuit court on July 21, 1955.

It is contended that the trial court erred: (a) In holding that appellant, Monee Will County District Fair Association, as a matter of law was not eligible to participate in the Will County allotment under the Fair and Exposition Fund, and (b) in holding that the circuit court of Will County had jurisdiction by way of mandamus to review the decision of the Department of Agriculture as to the eligibility of said appellant to participate in the Will County funds.

██ As to the latter contention of appellant, while it is the general rule that the writ of mandamus will not lie to compel the performance of acts or duties, which necessarily call for the exercise of judgment and discretion on the part of the officer or body at whose hands their performance is required, it is also true that a writ of mandamus will issue to command the performance of an official act in a proper manner when such act is in its nature ministerial, and not judicial. Graham v. People, 111 Ill. 253; People ex rel. Bibb v. Mayor & Common Council of Alton, 179 Ill. 615; Pyle v. Puntney, 254 Ill. App. 224.

██ In the latter case a petition for writ of mandamus was filed in the circuit court by appellant against the superintendent of schools to compel the latter to approve the attendance of appellant's son at the high school. A general demurrer filed by appellee was sustained and on appellant's refusal to plead further his petition was dismissed and judgment rendered against him, from which action the appeal was prosecuted. In that case the court recognized the general rule that courts will not review in a collaterial proceeding the facts upon which a ministerial officer is called upon to decide in his official capacity in the absence of a showing of fraud, collusion or oppression, but it reversed the judgment of the lower court on the ground that the superintendent's duty to give his approval became a mere ministerial act, the performance of which in a proper case could be enforced by mandamus.

Section 6i of the State Finance Act, which is Section

142i, Chap. 127, Ill. Rev. Stat., 1953, sets forth the requirements for county fairs to receive money from the appropriations to the Fair and Exposition Fund, and provides in part for such participation as follows:

". . . Such appropriations shall be distributed by the Department to such county fairs which are eligible to participate in appropriations made under Section 28 but which elect instead to participate in appropriations made pursuant to this Section."

Said Section 28 above referred to is also Section 164 of said Chap. 127. That section, insofar as it is pertinent, specifically provides:

". . . all appropriations which are made to the Department of Agriculture for the benefit of county fairs or other agricultural societies shall be distributed as hereinafter provided to those county fairs or agricultural societies which have held annual fairs or have been organized for that purpose and which at the time of the taking effect of this amendatory Act of 1949 were authorized to participate in such appropriations. But if thereafter in any county there is no such county fair or agricultural society which was so authorized at such time, the county board may select a county fair or agricultural society in that county which has been organized for the purpose of holding annual fairs. The Department of Agriculture may make uniform rules and regulations, not inconsistent with the provisions herein, governing all exhibits qualified under this Act to participate in state aid to county fairs, agricultural extension clubs and home economics clubs, '4-H' clubs or other agricultural societies. No such county fair or agricultural society shall participate in any year in such appropriation which shall not notify the Department of Agriculture in writing on or before April 1st of that year concerning the essential facts of its organization, its location, officers, *date of exhibition and approximate amount of premiums to be offered* except as hereinafter provided for agricultural extension clubs (Italics ours). . . . All such appropria-

556

tions shall be divided between such county fairs or agricultural societies as shall have given satisfactory evidence to the Department of Agriculture of *having held an annual fair* and *made an annual report* to the Department of Agriculture *as hereinafter provided.* (Italics ours) . . .

"On or before the 15th day of October of each year the president and secretary of each county fair or agricultural society claiming the benefit of any such appropriation shall file with the Department of Agriculture *a sworn statement of the actual amount of cash premiums paid at the fair for the current season,* which statement must correspond with the *published offer of premiums* . . . . Such statement shall be accompanied by *an itemized list of all premiums paid upon the basis of the premiums herein provided and a copy of the published premium list of such fair* and a full statement of receipts and expenditures for the current year duly verified by the secretary of such fair or agricultural society. (Italics ours)"

The history of the Fair Association Acts all point to three fundamental requirements for sharing in the benefits provided by the respective statutes: (1) the holding of the fair annually, (2) the paying of premiums, and (3) the making of the annual report on or before a certain date, in this case by October 15. In the Act of 1883 the emphasis was on holding an annual fair, paying premiums and making the annual report. Again in 1907 the law was amended, but the emphasis remained the same. In every instance that the law has been changed and additions have been made to Section 28 of the Finance Act, that portion requiring the holding of an annual fair and the filing of an annual report with the state government or some department thereof has always been retained in the statutes. There have been many amendments to the Fair Association Acts, and other requirements added, including new methods of creating county fairs, in keeping with

changing conditions, but always these three fundamental requirements have been included in the statute.

While it is true that the Department of Agriculture is vested with discretionary powers which have been conferred on that body by the statute, here we are concerned with the other portions of the statute dealing with the ministerial acts of that body. The legislature, in setting up the eligibility requirements entitling county fairs or agricultural societies to share in the benefits or premiums provided by the statute, had certain things in mind, one of the principal objectives being the stimulating of interest in annual fairs.

In Black's Law Dictionary, Third Edition, "Annual" is defined as "occurring or recurring once in each year; continuing for the period of a year; accruing within the space of a year; relating to or covering the events or affairs of a year." The reason for the first notification in writing to the Department of Agriculture by the fair association of (1) date of exhibition, and (2) the approximate amount of premiums to be offered, is to inform that body that the fair association plans on having an annual fair and plans to pay cash premiums. The reason for the second notification in writing, due on or before the 15th of October of each year, requiring a sworn statement from the fair association of the actual amount of cash premiums paid for the current season is to satisfy the Department of Agriculture that the annual fair has been held and that the cash premiums have actually been paid. By these two requirements in writing, the Department of Agriculture is enabled to make a proper distribution of monies to the many fair associations in the State of Illinois holding annual fairs. The language of the statute is plain. It needs little construction. The Director has but one course to pursue. There is little, if any, discretion left in the hands of the Director of the Department of Agriculture as to the proper dis-

558

tribution of these monies. The method of qualifying for same is specifically set forth in the statute. When an organization has qualified as to all requirements at the different times provided by statute, it is entitled to the benefits. Unless it does so qualify, it is not entitled to the same, and the Director cannot legally pay said monies to said non-qualifying organization. Should the Director order an illegal payment, his action would be an abuse of discretion. It could have no sanction in the law. For failure to obey the law, he should be compelled to do so. This the lower court required in its order and judgment. Any other result would lead to chaos in the carrying out of the provisions of the statute, and would seriously affect the aims and purposes of the State of Illinois in its attempts to foster and encourage the organization and continuation of fair or agricultural associations for the purposes of having these annual fairs. The order and judgment of the circuit court of Will County is correct.

Judgment affirmed.

DOVE, P. J. and CROW, J., concur.